**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 12-cv-00185-RM-KLM

JOSEPH R. CARPIO

Plaintiff,

v.

STONE & WEBSTER CONSTRUCTION, INC.,
a Louisiana corporation

Defendant.

---

**ORDER ON DEFENDANT STONE & WEBSTER'S MOTION FOR PARTIAL
SUMMARY JUDGMENT**

---

## I.   INTRODUCTION

This matter arises from an employment dispute under the Americans with Disabilities Act

(ADA), between defendant Stone & Webster Construction, Inc., (Stone & Webster), and plaintiff

Joseph R. Carpio (Carpio).  After receiving an Equal Employment Opportunity Commission

(EEOC) Notice of Right to Sue on November 17, 2011, Carpio filed suit claiming: (1) failure to

reasonably accommodate his disability under the Americans with Disabilities Act (ADA); (2)

refusal to hire in violation of the ADA and (3) promissory estoppel based on representations and

promises Carpio alleges Stone & Webster made regarding Carpio's potential for rehire which

induced him to resign his position.  (ECF No.1).

Stone & Webster pursuant to Fed.R.Civ.P. 56, now moves for partial summary judgment on. Carpio's First Claim for Relief (failure to accommodate), and Second Claim for Relief (failure to hire).  (ECF No. 23).  Carpio opposes Stone & Webster's motion.  (ECF No.26).

## II      FACTUAL BACKGROUND

### A.      Undisputed Facts

The following undisputed facts are gleaned from the court's review of the record.

Stone & Webster Construction, Inc., a Louisiana corporation, is a division of The Shaw Group, a global corporation with over 25,000 employees.  (ECF No.1; p.1; ECF No. 23, p.3; ECF No. 26, p.4).  Stone & Webster a union contractor builds and maintains power plants, refineries and chemical processing facilities including in 2007 and 2008, the Commanche 3 power plant project in Pueblo, Colorado.  (ECF No.1; p.2; ECF No. 23, p.3; ECF No. 26, p.4).  Carpio is a Type II diabetic and an electrician by trade.  (ECF No.1, p.3; ECF No. 23, p.4; ECF No. 26, p.4).  Carpio was a member of the International Brotherhood of Electrical Workers (IBEW) Local No. 12 at all times relevant to this action.  *Id.*

Stone & Webster staffed the Comanche 3 project by submitting requisitions to union halls including the IBEW, Local No.12.  (ECF No.1; p.3; ECF No. 23,p.4; ECF No. 26, p.4).  Carpio accepted a referral and began work for Stone & Webster on November 27, 2007.  (*Id.*; ECF No.23-4).

Carpio has a prosthetic leg.  (ECF No.1; p.3; ECF No. 23,p.4; ECF No. 26, p.4).  Upon beginning work, Carpio told Stone & Webster's general foreman that he had a prosthetic leg but did not relay that his amputation was a result of an infection exacerbated by his diabetes or that

2

he had diabetes.  *Id.*  By the end of his first day of work, Carpio had developed a painful blister on his stump.  *Id.*  He called in the next day informing Stone & Webster that he was unable to report to work because of his blister.  *Id.*  Carpio sought medical treatment that day and his physician advised him to take sufficient time off to allow the blister to heal.  (ECF No.1; p.4; ECF No. 23, p.4; ECF No. 26, p.4).  Carpio then called in sick several subsequent days and eventually voluntarily resigned his position by taking a "layoff".  (ECF No.1; p.4; ECF No. 23, pp.4-5; ECF No. 26, pp.4-5).

### B.      Disputed Facts

Carpio alleges that after telling his general foreman about his prosthesis, his foreman relayed that when he told the electrical superintendent about Carpio's prosthesis, the electrical superintendent was "not happy" with Carpio.  (ECF No. 1, p.3 and ECF No. 26-1, pp.6-7).  He did not explain what "not happy" meant.  *Id.*  The last time Carpio called in sick, he explained that he did not know exactly how long it would take his leg to heal and requested that the superintendent call him.  (ECF No.26-1, p.8).  Stone & Webster's superintendent called him back as requested.  *Id.*

Carpio contends that in that call, the superintendent explained that he "really needed to refill [Carpio's] position and that if [Carpio] would take a layoff until the leg healed and then [he] could come back as soon as the leg healed, that [Carpio] would be eligible for rehire."  *Id.*  Carpio did take a layoff which was noted on Stone & Webster's payroll removal form as a "Voluntary Quit" on December 10, 2007, for "Personal" reasons.  (ECF No. 1,p.4; ECF No.23-8; ECF No.26-p.3).

A short time later, in late December 2007, Carpio's physician released him for work. (ECF No.1, p.4; ECF No. 26, p.3; ECF No.26-1, p.8).  Shortly thereafter Carpio accepted a union referral to return to work at the Commanche 3 project.  (ECF No. 1; ECF No. 26; ECF No. 26-1, pp.8-9).  However, Stone & Webster "turned around" or refused to hire Carpio on this and all subsequent attempts he made to return to work for Stone & Webster for the following approximately ten months.  *Id.*

In an attempt to facilitate his return to work for Stone & Webster, Carpio contends he called the Commanche 3 project's electrical superintendent who told Carpio that as far as he was concerned, Carpio was never going to come back to work and that he did not need to explain why that was.  (ECF No.1, pp5-6; ECF No.26, p.4; ECF No.26-1, p.10).  During this time, Carpio also made multiple calls to Stone & Webster's various Human Resources (HR) departments in Pueblo, Colorado, Baton Rouge, Louisiana and Charlotte, North Carolina, asking why he was not being rehired.  (ECF No.1, p.5; ECF No.26, pp.3-4; ECF No.26-1, pp.9-12).  All of the various HR departments told Carpio that he was eligible for rehire and none offered any explanation for Stone & Webster's failure to rehire him.  *Id.*

### III.    LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994); *Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one

4

party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Zwygart v. Board of County Comm'rs,* 483 F.3d 1086, 1090 (10th Cir. 2007).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987); *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995).

The analysis to be applied on a motion for summary judgment differs depending on whether the moving party is also the party with the burden of proof at trial. Where, as here, the non-movant bears the burden of proof at trial, the non-movant must point to specific evidence establishing a genuine issue of material fact with regard to each challenged element. *In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D.Colo.2002); *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir.2002).

## IV.   DISCUSSION

### A.   Failure to Accommodate Disability under the ADA

The ADA prohibits employers from discriminating against individuals on the basis of disability. 42 U.S.C. §12112(a). ADA cases are generally are evaluated under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* burden-shifting analysis requires a plaintiff to raise a genuine issue of material fact on each element of his *prima facie* discrimination case. *Hardy v. S.F. Phosphates*

5

*Ltd. Co.,* 185 F3d 1076, 1079 (10th Cir. 1999); *Carter v. Pathfinder Energy Services, Inc.,* 662

F.3d 1134, 1141 (10th Cir. 2011).

An ADA discrimination claim, requires that a plaintiff establish that: (1) he is a disabled

person as defined by the ADA; (2) he is qualified, with or without reasonable accommodation, to

perform the essential functions of the job held or desired; and (3) the employer discriminated

against him because of that disability. *Butler v. City of Prairie Village,* 172 F.3d 736, 748 (10th

Cir. 1999).  A qualified individual with a disability is "an individual with a disability who, with

or without reasonable accommodation, can perform the essential functions of the employment

position that such individual holds or desires." 42 U.S.C. §12112(8).

Carpio contends that he is qualified to perform the essential functions of the position with

Stone & Webster for which he was applying, with or without accommodation.  (ECF No.1, p.6).

He further argues that he is disabled within the meaning of the ADA in that he suffers from type

II diabetes and is as a result, substantially limited in the major life activities of walking, standing,

lifting, bending and working.  *Id.*  He alleges that Stone & Webster failed to accommodate his

disability which caused him to suffer economic injury.  *Id.*

While Stone & Webster do not disagree that Carpio is a qualified electrician, they

disagree that Carpio's diabetes qualifies as a disability under the ADA because: (1) his diabetes

is under control with insulin; (2) he never told anyone at Stone & Webster that he had diabetes

and (3) he did not ever request any accommodation from Stone & Webster.  (ECF No.23, pp2-3).

However, Stone & Webster 's position on Carpio's disability ignores their exhibit D, an

on-roll form listing Carpio as "disabled."  (ECF No. 23-1, p.5).  Further, Carpio's long-term

diabetes despite being controlled, is sufficiently severe to have compromised his circulatory and

immune systems to the extent that an infection in his toe(s) ultimately required a below knee

amputation.  (ECF No. 26-1, p.6).  It follows that with this severity of disease, a blister such as

Carpio suffered in this instance, could if improperly cared for, pose a similar threat to life and

limb.  I therefore find that Carpio has established that his diabetes even in its medicated state,

affects many systems in his body and is a physical impairment or disability within the meaning

of the ADA.  *Carter,* 662 F.3d at 1142.

Stone & Webster argues that even if Carpio's diabetes qualifies as a disability, he did not

tell them specifically that he had diabetes when requesting time off to heal his blister and so fails

to establish that he alerted them of his stated disability.  ECF No.23, pp.10-11).  In light of

liberal federal pleading requirements this argument places too stringent a burden on Carpio.  A

plaintiff may clarify his position either at the pleading stage or later at trial.  *Poindexter v.*

*Atchison, Topeka and Santa Fe Railway Co.,* 168 F.3d 1228 1232 (10th Cir. 1999).  Additionally,

Stone & Webster's argument ignores that while Carpio admits he failed to specifically state that

he has diabetes, he did inform his immediate supervisor of his prosthetic leg and requested

reasonable accommodation, specifically time off to allow the blister on his stump to heal.

*Hudson v, MCI Telecommunications Corp.,* 87 F.3d 1170, 1174 (10th Cir. 1996)(An allowance of

time for medical care or treatment may constitute a reasonable accommodation).

For the reasons stated above, Stone & Webster's motion for summary judgment on

Carpio's first claim of failure to accommodate, is denied.  A rational jury could find that Carpio

a qualified and disabled individual, requested reasonable accommodation – time off to heal -

which Stone & Webster refused.  *Hudson ,* 87 F.3d 1167, 1169 (10th Cir. 1996).

### B.      Failure to Hire under the ADA

The ADA provides in relevant part that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to a number of actions by an employer, including hiring."  42 U.S.C. §12112(a)(internal quotations omitted)..

In his Second Claim for Relief, Carpio alleges that despite being qualified for the electrician positions for which he repeatedly accepted Stone & Webster referrals, the company refused hire him because of his disability.  (ECF No. 1, pp.7-8).  Stone & Webster move for summary judgment on this claim contending that they could not have discriminated against him for a disability of which they were unaware.  (ECF No.23, pp.11-14).  Stone & Webster fail to offer any legitimate nondiscriminatory reason for refusing to hire Carpio, and rely solely on their contended lack of knowledge of Carpio's diabetes.  *Id.*

ADA discrimination claims use the *McDonnell-Douglas* burden-shifting analysis. *McDonnell-Douglas*, 411 U.S. at 802-04; *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 506-11 (1993).  Under this burden-shifting framework, a plaintiff who makes a *prima facie* showing that s/he is a "qualified, disabled person" under the ADA, creates a presumption that the defendant engaged in unlawful discrimination.  *Hicks*, 509 U.S. at 506.  A defendant must clearly set forth evidence of a legitimate, nondiscriminatory reason for its challenged employment decision which, if believed by the trier of fact*,* would support a finding that unlawful discrimination was not the cause of that employment action.  *Id.*

In the instant action, construing the evidence in the light most favorable to Carpio, the non-moving party, I find he is qualified and disabled.  The burden of production therefore shifts

8

to Stone & Webster to produce evidence of a legitimate, nondiscriminatory reason(s) for the

repeated "turn arounds" or refusals to hire that Carpio experienced from December 2007 through

October 2008.  Because Stone & Webster offer no reason for refusing to rehire him, I find they

have failed to carry their burden of production.  I therefore deny Stone & Webster's motion for

summary judgment on Carpio's second claim for relief.

**V.     CONCLUSION**

Based on the foregoing, defendant Stone & Webster's Motion for Partial Summary

Judgment on plaintiff Carpio's First and Second Claims for Relief  (ECF No.23), is **DENIED.**

IT IS SO ORDERED.

DATED this 1st day of June, 2015.

BY THE COURT:

_____

RAYMOND P. MOORE

United States District Judge